UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
SECURITIES AND EXCHANGE COMMISSION, :
:
       Plaintiff, :
: ECF Case
 - against – :
: No. 23 Civ. 02795 (LJL)
CHARLIE JAVICE, :
:
       Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION TO INTERVENE AND FOR A STAY OF DISCOVERY

                DAMIAN WILLIAMS
                United States Attorney for the
                Southern District of New York
                Attorney for the United States
                     of America

Micah F. Fergenson
Dina McLeod
Assistant United States Attorneys

    *- Of Counsel -*

## PRELIMINARY STATEMENT

The United States of America, by and through Damian Williams, the United States Attorney for the Southern District of New York (the "Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned case (the "SEC Case"), pursuant to Rule 24 of the Federal Rules of Civil Procedure; and (ii) to stay discovery in the SEC Case until the conclusion of the parallel criminal case, *United States v. Charlie Javice*, 23 Cr. 251 (AKH) (the "Criminal Case").

This Court should stay discovery in the SEC Case until the conclusion of the trial in the Criminal Case. The SEC Case arises from the same conduct and circumstances that underlie the Criminal Case and litigation of the SEC Case will necessarily involve the same facts, documents, and witnesses relevant to the criminal trial. A stay of discovery is appropriate because any exchange of discovery in the SEC Case would be asymmetrical and would allow the defendants to circumvent the criminal discovery rules and improperly tailor their defenses in the Criminal Case. And a stay of discovery now would be fair because it would permit the defendants to litigate putatively dispositive motions to dismiss in the SEC Case, while conserving the parties' resources and preventing improper abuse of civil discovery tools to gain advantage in the Criminal Case.

The SEC takes no position on the request for a stay. Counsel for Javice has informed the Government that their client opposes the Government's motion. But as detailed below, the fairness, efficiency, and public good resulting from a stay of discovery outweighs the defendant's preference.  Accordingly, and for the reasons set forth below, the Government respectfully

requests that this Court enter an order staying discovery in this action until the completion of the Criminal Case.

## FACTUAL BACKGROUND

On April 3, 2023, Charlie Javice was arrested pursuant to a criminal complaint (the "Complaint," attached as Exhibit A) filed in the U.S. District Court for the Southern District of New York, charging Javice with conspiracy to commit wire fraud and bank fraud, wire fraud, bank fraud, and securities fraud. On April 4, 2023, the SEC filed a complaint against Javice related to the same scheme charged in the Complaint (the "SEC Complaint"). On May 18, 2023, a grand jury in this District issued Indictment 23 Cr. 251 (AKH) (the "Indictment," attached as Exhibit B) charging Javice in four counts with conspiracy to commit wire fraud and bank fraud, wire fraud, bank fraud, and securities fraud.

As alleged in the Complaint and the SEC Complaint, in 2021, Javice engaged in a calculated scheme to falsely and dramatically inflate the number of customers at her company, Frank, in order to fraudulently induce J.P. Morgan Chase ("JPMC") to acquire Frank for $175 million. *See, e.g.*, Compl. ¶ 8.

In or about 2017, Javice founded Frank, a for-profit company that offered an online platform designed to simplify the process of filling out the Free Application for Federal Student Aid ("FAFSA"). The FAFSA is a federal government form, available free of charge, that students use to apply for financial aid for college or graduate school. Javice was Frank's CEO. *See, e.g.*, Compl. ¶¶ 9, 15-16. In or about 2021, Javice began to pursue the sale of Frank to a larger financial institution. Two major banks—one being JPMC—expressed interest and began acquisition processes with Frank. Javice represented repeatedly to those banks that Frank had 4.25 million customers or "users." Javice explicitly defined "users"—to both banks—as individuals who had signed up for an account with Frank and for whom Frank therefore had at

least four identified categories of data (i.e., first name, last name, email address, and phone number). In fact, Frank had less than 300,000 users. *See, e.g.*, Compl. ¶¶ 10, 18-19, 22-23.

When JPMC sought to verify the number of Frank's users and the amount of data collected about them—information that was critical to JPMC's decision to move forward with the acquisition process—Javice fabricated a data set. To do this, Javice approached a data scientist and hired him to create an artificially generated data set (a so-called synthetic data set). Then, Javice provided that synthetic data set to an agreed-upon third-party vendor in an effort to confirm to JPMC that the data set had over 4.25 million rows, consistent with Javice's misrepresentations. Through this process, Javice caused the third-party vendor to convey to JPMC that the data set had over 4.25 million rows. *See, e.g.*, Compl. ¶¶ 11, 21, 24-26.

In reliance on Javice's fraudulent representations about Frank's users, JPMC agreed to purchase Frank for $175 million. Javice made millions of dollars from the acquisition. *See, e.g.*, Compl. ¶¶ 12, 31.

Unbeknownst to JPMC, at or about the same time that Javice creating the fabricated data set, Javice and a co-conspirator ("CC-1") sought to purchase, on the open market, real data for over 4.25 million college students to cover up their lies. Javice and CC-1 succeeded in purchasing a data set of 4.5 million students for $105,000, but it did not contain all the data fields that Javice had represented to JPMC were maintained by Frank. Javice then purchased an additional set of data on the open market, in order to augment the data set of 4.5 million users. After JPMC acquired Frank, JPMC employees asked Javice and CC-1 to provide the data set of Frank users so that JPMC could begin a marketing campaign to those users. In response, Javice provided what was supposedly Frank's user data. In fact, Javice provided the data she and CC-1 had purchased on the open market, at a small fraction of the price that JPMC paid to acquire Frank and its purported users. *See, e.g.*, Compl. ¶¶ 13, 28-30, 32.

**ARGUMENT**

The Government's requests to intervene and for a stay of discovery in the SEC Case should be granted. Were discovery in the SEC Case to proceed, there would be a risk of significant interference with the Criminal Case. A stay of discovery in the SEC Case would prevent the circumvention of important statutory limitations on criminal discovery and avoid asymmetrical discovery, and preserve the Court's resources because many of the issues presented by the civil action will be resolved in the Criminal Case. And particularly because such a stay would be limited to delaying the production of discovery, it would not prejudice any party to the SEC Case.

**I.      THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE**

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions, given the effect upon the Criminal Case this civil proceeding would have and the similarity of claims and facts between the parallel proceedings.

As a general rule, courts "have allowed the government to intervene in civil actions—especially when the Government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to

4

circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represents the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest.").

Moreover, a trial in this action in advance of a related criminal trial could impair or impede the Government's ability to protect its interests in the enforcement of federal criminal law. This case and the related Criminal Case arise from the same alleged scheme to commit fraud in connection with Frank's acquisition. Holding a civil trial before a criminal trial would create the possibility that there will be two trials covering the same fraudulent acts and therefore the probability that witnesses will be unnecessarily burdened by having to testify twice. In light of those circumstances, the Government respectfully submits that its application to intervene should be granted.

## II.    A STAY OF DISCOVERY IN THIS ACTION SHOULD BE GRANTED

### A.    Applicable Law

This Court has the inherent power to stay discovery in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action." (internal citations and quotations omitted)). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When considering whether to grant a stay, courts balance the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case;
>
> (2) the status of the case, including whether the defendants have been indicted;
>
> (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;
>
> (4) the private interests of and burden on the defendants;
>
> (5) the interest of the court; and
>
> (6) the public interest.

*SEC v. Treadway*, No. 04 Civ. 3464 (VM) (JCF), 2005 WL 713826, at *2-*3 (S.D.N.Y. March 30, 2005) (quoting *In re Worldcom, Inc. Sec. Litig.*, Nos. 02 Civ. 3288, 02 Civ. 4816, 2002 WL 31729501, at *4 (S.D.N.Y. Dec. 5, 2002)); *see also Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (listing similar factors). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id.*

Here, the parallel Criminal Action arises from an identical set of facts and circumstances that underlie this action. In similar situations, courts in this Circuit and others have routinely entered a stay of parallel civil actions, even over a defendant's objection. *See, e.g., CFTC v. Baldwin, et al.*, No. 21 Civ. 5707 (LJL), ECF Doc. 54 (S.D.N.Y. Nov. 15, 2021) (granting stay of all proceedings except for entry of default judgment against non-appearing defendants); *SEC v. Hu*, No. 20 Civ. 5496 (DLC), ECF Doc. 12 (S.D.N.Y. Sep. 21, 2020) (granting full stay with consent of defendant and non-objection of plaintiff); *SEC v. LaGuardia*, No. 19 Civ. 5895 (ALC) (SDA), ECF Doc. 31 (S.D.N.Y. Jan. 23, 2020) (granting partial stay over defendant's objection);

6

*SEC v. Blakstad*, No. 19 Civ. 6387 (DLC), ECF Doc. 17 (S.D.N.Y. Sep. 10, 2019) (granting full stay that was unopposed); *SEC v. Pinto-Thomaz*, No. 18 Civ. 5757 (JPO), ECF Doc. 21 (S.D.N.Y. Oct. 11, 2018) (granting full stay that was unopposed); *SEC v. Wey*, No. 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016) (after Government's motion for partial stay of discovery, and over objection of multiple defendants, implementing full stay of discovery, with the exception that SEC would produce testimony transcripts that had been produced in criminal case); *SEC v. Town of Ramapo N.Y., et al.*, No. 16 Civ. 2779 (CS), ECF Doc. 90 at 42 (S.D.N.Y. Nov. 4, 2016) (granting partial stay requested by Government over defense objection); *SEC v. Durante et al.*, No. 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) (after Government's initial motion for partial stay of discovery, fully staying discovery and proceedings in the matter); *SEC v. Shkreli, et al.*, No. 15 Civ. 7175 (KAM), 2016 WL 1122029, at *2-7 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, a full stay); *SEC v. Dubovoy*, 15 Civ. 6076, Docket No. 244 (Transcript of Oral Decision) (D.N.J. Jan. 29, 2016) (granting stay of discovery of civil case in light of parallel criminal action, notwithstanding "vigorous[] oppos[ition]" from certain of the civil defendants who were not a party to the criminal action); *Harris v. Nassau County et al.*, No. 13 Civ. 4728 (NGG) (RML), 2014 WL 3491286, at *4 (E.D.N.Y. July 11, 2014) ("Courts consistently hold that a stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." (quotation marks omitted)); *SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (granting request for full stay of discovery for six months over defendant's objection while criminal investigation was proceeding but prior to any criminal charge); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (granting full stay over defendants' objections).

7

### B. Discussion

Application of each of these factors here weighs in favor of the stay sought by the Government.

#### 1. *The Extent of the Overlap*

That the criminal and civil cases involve essentially identical facts and issues weighs heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, as described above, the Criminal Case and this case involve the same alleged fraudulent scheme perpetrated by Javice. The cases involve virtually identical facts, witnesses, and issues, and the cases name the same individual defendant. As a result, this factor weighs heavily in favor of a stay. *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4; *SEC v. Tuzman*, No. 15 Civ. 7057 (AJN), ECF Doc. 43 at 3 (S.D.N.Y. Mar. 1, 2016).

#### 2. *The Status of the Criminal Case*

The filing of the Indictment in the Criminal Case also weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also*

*Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."). Javice has been formally charged and will soon receive Rule 16 discovery. Accordingly, this factor likewise weighs in favor of a stay.

### 3. *The Potential Prejudice to the Parties*

A stay of discovery will not prejudice any party. As an initial matter, the requested stay is limited to a stay of discovery, and the defendant will therefore still be able to litigate motions to dismiss the SEC Case while the Criminal Case is pending. Moreover, granting a stay of discovery in the SEC Case to permit the Criminal Case to proceed to its conclusion would in fact benefit Javice, as granting a stay of discovery in the SEC Case would, for now, obviate her being forced to choose between being prejudiced in the SEC Case by the assertion of Fifth Amendment rights or being prejudiced in the Criminal Case if she waived those rights. And the SEC has informed the Government that it takes no position on the Government's motion.[1] Accordingly, a stay of discovery would not prejudice the parties to the SEC Case.

### 4. *The Interests of the Court*

Considerations of judicial economy also weigh in favor of granting a stay of discovery. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the

---

[1] Where the SEC, the plaintiff in the litigation, does not oppose a stay, "[t]his position perhaps indicates support for a stay, but at the very least makes clear that the SEC does not believe it will be prejudiced by one." *SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11-CV-6500, 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012).

civil action. *Cf. SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *Global Indus.*, 2012 WL 5505738, at *4 ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the SEC Case, potentially streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application.

### 5. *The Public Interest*

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery—restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *Nicholas*, 569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing

field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil] discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43 at 3-4 (internal citations and quotations omitted). Based on these concerns, judges in this District frequently have granted Government requests to limit discovery in a parallel civil action in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*, *id.* at 3-7 (granting stay sought by Government); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not

11

otherwise be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))).

Indeed, the rationale underlying a stay is even stronger in an indicted matter, given that a defendant in a charged criminal case likely will invoke his Fifth Amendment rights in the civil case and not participate in the very discovery process he or she seeks to use affirmatively. *See, e.g., SEC v. Chakrapani*, Nos. 09 Civ. 325 (RJS), 09 Civ. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y. June 29, 2010) (inviting the Government to renew its motion to stay discovery if the defendant intends to invoke the Fifth Amendment if noticed for a deposition); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants").

A denial of the Government's requested stay would therefore result in asymmetrical discovery, pursuant to which the SEC Case defendants would be able to obtain statements from relevant witnesses through depositions and use other discovery mechanisms such as requests for admission and interrogatories to obtain information from the SEC, while the SEC would be unable to use any of these discovery mechanisms to obtain information from Javice, because of the assertion of her Fifth Amendment rights. Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony and obtaining asymmetrical discovery, and because the SEC Case defendants will not in any way be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that its application to intervene and for a stay of discovery in this matter be granted. A proposed stay order is attached as Exhibit C.

Dated: New York, New York
       May 24, 2023

                                                Respectfully submitted,

                                                DAMIAN WILLIAMS
                                                United States Attorney

By:    /s/ Micah F. Fergenson
        Micah F. Fergenson
        Dina McLeod
        Assistant United States Attorneys
        One Saint Andrew's Plaza
        New York, New York 10007
        Telephone: (212) 637-2190