**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE
COMMISSION,

        *Plaintiff*,

   vs.

CHARLIE JAVICE,

        *Defendant*.

Case No. 1:23-cv-02795 (LJL)

**DEFENDANT CHARLIE JAVICE'S OPPOSITION TO THE GOVERNMENT'S
APPLICATION TO INTERVENE AND FOR A STAY OF DISCOVERY**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

    A.    The SEC and Government Conducted a Parallel Investigation and Filed Two Separate But Coordinated Cases Against Ms. Javice ..................................2

    B.    The SEC and the Government are Acting as Taxpayer-Funded Agents of JPMC ...........................................................................................................................3

    C.    SEC Initially Proposes Ambitious Discovery Schedule, Backtracking to Deprive Ms. Javice of Evidence Critical to Her Defense, While Continuing to Investigate ...................................................................................6

ARGUMENT ...........................................................................................................................8

    A.    The Government Has Not Met Its Burden to Establish Any Justifiable Basis For a Stay ........................................................................................................9

        1.    Overlapping Issues and Mere Fact of Indictment Do Not Warrant a Stay .................................................................................................10

        2.    Ms. Javice Would Be Directly and Severely Prejudiced by Any Delay in the Litigation of This Action and There is No Prejudice to the SEC or Government of Proceeding ........................................13

        3.    A Stay of Discovery Will Waste Judicial Resources and Impose Unnecessary Burdens on this Court ..........................................16

        4.    The Public Interest Favors Prompt Resolution of the SEC's Case ...........17

    B.    Any Stay in this Case Should Apply Only to Depositions of Fact Witnesses, Not to Document Discovery .............................................................19

CONCLUSION .....................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
  No. CV 14-3053-MWF (AFMx), 2018 WL 11242039 (C.D. Cal. Apr. 6, 2018) ................. 18

*England Sports Network, LP v. Alley Interactive, LLC*,
  No. 22-cv-10024-ADB, 2023 WL 2140474 (D. Mass. Feb. 21, 2023) ................................ 15

*In re Scrap Metal Antitrust Litig.*,
  No. 1:02-CV-0844, 2002 WL 31988168 (N.D. Ohio Nov. 7, 2002) ................................... 20

*Keating v. Office of Thrift Supervision*,
  45 F.3d 322 (9th Cir. 1995) ........................................................................................ 19

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d Cir. 2012) ..................................................................................... 9, 10

*Nosik v. Singe*,
  40 F.3d 592 (2d. Cir. 1994) ........................................................................................ 11

*SEC v. Balwani*,
  No. 5:18-cv-01603-EJD, 2019 WL 2491963 (N.D. Cal. June 14, 2019) ...................... 17, 18

*SEC v. Blaszczak*,
  No. 17-cv-3919 (AJN), 2018 WL 301091 (S.D.N.Y. Jan. 3, 2018) .................................. 14

*SEC v. Chakrapani*,
  No. 09 Civ. 325(RJS), 2010 WL 2605819 (S.D.N.Y. June 29, 2010) ........ 9, 10, 16, 17, 20, 21

*SEC v. Credit Bancorp*,
  738 F. Supp. 2d 376 (S.D.N.Y. 2010) ........................................................................... 11

*SEC v. Curshen*,
  No. 11-20561-JLK, 2012 WL 12864338 (S.D. Fla. May 25, 2012) .................................. 13

*SEC v. Dresser Indus., Inc.*,
  628 F.2d 1368 (D.C. Cir. 1980) ................................................................................... 16

*SEC v. Fraser*,
  No. CV-09-00443-PHX-GMS, 2009 WL 1531854 (D. Ariz. June 1, 2009) ................... 12, 15

*SEC v. Gilbertson*,
  No. 16-cv-3779 (DWF/HB), 2017 WL 5172313 (D. Minn. May 12, 2017) ........................ 20

*SEC v. Jones*,
  No. 04 Civ. 4385(RWS), 2005 WL 2837462, (S.D.N.Y. Oct. 28, 2005) ........................ 13, 14

*SEC v. Kanodia*,
   153 F. Supp. 3d 478 (D. Mass. 2015) ............................................................... 17, 20

*SEC v. O'Neill*,
   98 F. Supp. 3d 219 (D. Mass. 2015) ....................................................... 1, 11, 18, 19

*SEC v. Oakford Corp.*,
   181 F.R.D. 269 (S.D.N.Y. 1998) ..................................................................... 12, 19

*SEC v. Saad*,
   229 F.R.D. 90 (S.D.N.Y. 2005) ............................................................... 9, 13, 14, 20

*SEC v. Saad*,
   384 F. Supp. 2d 692 (S.D.N.Y. 2005)..................................................................... 11

*SEC v. Sandifur*,
   No. C05-1631 C, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006)........................ 12

*SEC v. Zouvas*,
   No. CV-17-00427-PHX-SPL, 2018 WL 11241077 (D. Ariz. Oct. 5, 2018) ........... 15

*Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*,
   175 F. Supp. 2d 573 (S.D.N.Y. 2001)................................................................... 8, 9

*Travelers Cas. & Sur. Co. v. Vanderbilt Grp., LLC*,
   No. 01 CIV. 7927(DLC), 2002 WL 844345 (S.D.N.Y. May 2, 2002) ................... 16

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
   886 F. Supp. 1134 (S.D.N.Y. 1995)......................................................................... 9

*Twenty First Century Corp. v. LaBianca*,
   801 F. Supp. 1007 (E.D.N.Y. 1992) ........................................................................ 2

*United States v. Dist. Council of N.Y. City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*,
   No. 0 Civ. 5722 (CSH), 1991 WL 243385 (S.D.N.Y. Nov. 8, 1991).................... 12

*United States v. Okatan*,
   728 F.3d 111 (2d Cir. 2013).................................................................................. 21

*Volmar Distribs., Inc. v. N.Y. Post Co.*,
   152 F.R.D. 36 (S.D.N.Y. 1993) ............................................................................ 10

*Weil v. Markowitz*,
   829 F.2d 166 (D.C. Cir. 1987) .............................................................................. 10

## Other Authorities

8 Bus. & Com. Litig. Fed. Cts. § 92:36 (5th ed.)............................................................ 14

## INTRODUCTION

"If the government and the SEC choose to bring parallel civil and criminal cases close in time to each other, then each entity **must be prepared to go ahead with its case on a usual schedule**." *SEC v. O'Neill*, 98 F. Supp. 3d 219, 223-24 (D. Mass. 2015) (emphasis added). This is precisely the case here. After working in step with the U.S. Securities and Exchange Commission ("SEC") for months to conduct a parallel investigation and having orchestrated the coordinated filing of criminal and civil actions against Ms. Javice in this Court at the exact same time, the Government now seeks to intervene in this action to "stay discovery in the SEC Case until the conclusion of the parallel criminal case." Dkt. No. 20 at 1. In so doing, the Government makes no effort to conceal the fact that its application is expressly designed to gain advantage in the criminal action, and to enable the SEC and the Government to play hide-the-ball with Ms. Javice as she fights for her liberty and livelihood, while depriving her of a level playing field and her right to timely defend herself against **both** the SEC's **and** the Government's rashly filed claims. The SEC, while purporting to take no position on the Government's motion,[1] simultaneously has asked this Court to (i) extend the SEC's time to respond to Ms. Javice's first set of document requests; and (ii) permit the SEC to conduct a continuing investigation during the pendency of any stay. *See* Dkt. No. 25. This is nothing less than a coordinated governmental effort to deprive Ms. Javice of exculpatory evidence critical to her defense and necessary to exonerate her. This Court should deny the Government's motion to stay.[2]

---

[1]   *See* Declaration of Sarah Heaton Concannon in Support of Defendant Charlie Javice's Opposition to the Government's Application to Intervene and For a Stay of Discovery ("Concannon Decl.") ¶ 4 & Ex. A (correspondence between the SEC's counsel and Ms. Javice's counsel) at 11.

[2]   Ms. Javice disagrees with the Government's suggestion that Rule 24(a)(2) of the Federal Rules of Civil Procedure provides the Government with broad intervention as a matter of right, Dkt. No. 20 at 4-5, but Ms. Javice does not object to the Government's request to intervene

## FACTUAL BACKGROUND

**A.**   **The SEC and Government Conducted a Parallel Investigation and Filed Two Separate But Coordinated Cases Against Ms. Javice**

The SEC and the Government began investigating Ms. Javice no later than early 2023. After months of investigation, the SEC and the Government ultimately decided to bring two separate cases against Ms. Javice:  the SEC's civil enforcement action for purported violations of the federal securities laws, and the Government's criminal action for purported bank and wire fraud.   The actions are based on precisely the same alleged misconduct—that Ms. Javice somehow fraudulently induced JPMorgan Chase Bank, N.A. ("JPMC") (one of the largest and most sophisticated financial institutions in the world) to acquire Ms. Javice's student loan company, TAPD, Inc. d/b/a Frank ("Frank"), for $175 million.

The SEC and the Government announced their parallel actions with great public fanfare within hours of each other on April 4, 2023—the day *after* Ms. Javice's arrest and the unsealing of the Government's criminal complaint.  *See* Concannon Decl. ¶ 13 & Ex. B (SEC's Apr. 4, 2023 Press Release); Concannon Decl. ¶ 14 & Ex. C (Government's Apr. 4, 2023 Press Release). In other words, before Ms. Javice had any inkling that the SEC or the Government were investigating her, the Government already had filed a sealed criminal complaint and shared both the substance of that complaint and the date and time of Ms. Javice's anticipated arrest and unsealing with the SEC, so that the SEC could announce its action in a coordinated media push with the Government.  In its press release, the SEC expressly thanked the Government, stating, "[t]he SEC appreciates the assistance of the U.S. Attorney's Office for the Southern District of

---

in this action "for the **limited** purpose of moving to stay discovery," *id.* at 4 (quoting *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992)) (emphasis added).

New York, which announced a parallel, criminal investigation today, as well as the Federal Bureau of Investigation." Ex. B.  The Government did not reciprocate.  *See* Ex. C.

The SEC and the Government—not Ms. Javice—made the decision to file two separate actions.  Having made that decision, the SEC and the Government must move forward with their cases, so that Ms. Javice may exercise her right to defend both matters expeditiously.

### B.     The SEC and the Government are Acting as Taxpayer-Funded Agents of JPMC

The SEC and the Government's actions against Ms. Javice here are both astonishing and unique.  These taxpayer-funded governmental agencies have unwittingly permitted themselves to be converted into agents of JPMC, "a leader in investment banking, commercial banking, financial transaction processing and asset management[,] ... serv[ing] millions of customers, predominantly in the U.S., and many of the world's most prominent corporate, institutional and government clients globally."  *See* Concannon Decl. ¶ 15 & Ex. D (JPMC's "About Us" webpage) at 1.  JPMC's ***private*** grievance against Ms. Javice, filed in the U.S. District Court for the District of Delaware on December 22, 2022 and still pending, *JPMorgan Chase Bank, N.A. v. Javice et. al.*, No. 1:22-cv-01621-MN (D. Del.), has somehow mushroomed into ***two separate governmental actions***.  JPMC's extraordinary ability to convert the SEC and the Government into its personal trial counsel, litigating on its behalf to obtain alleged restitution and disgorgement for a ***single*** well-heeled institutional alleged victim, necessitates moving forward with both the SEC's and the Government's actions ***now***.  Ms. Javice must be permitted to put to rest, for once and for all, JPMC's claims that she somehow defrauded it and put a stop to JPMC's exploitation of governmental and judicial resources on its personal behalf by timely obtaining final resolution in the SEC action, criminal action, and Delaware action.

On September 14, 2021, following several weeks of extensive due diligence, JPMC acquired Ms. Javice's company, Frank.  *See* Dkt. No. 1 ¶ 72.  Frank was designed as a tool for students to help expedite completion of the Free Application for Federal Student Aid, also known as "FAFSA" and ultimately offered a broader range of content and services to support students and families in navigating the path towards higher education.  *See id.* ¶¶ 16, 20-22.  JPMC hired Ms. Javice following the acquisition, appointing her to a managing director position and offering her a lucrative compensation and incentive package.  *Id.* ¶ 13.  But after Ms. Javice vocally objected to JPMC's suggestion to pivot toward an unethical and potentially illegal business strategy for Frank, and after unforeseen regulatory changes outside of Ms. Javice's control rendered Frank's core tool less effective (unexpectedly diminishing the value of JPMC's investment), JPMC suddenly needed, and found, a scapegoat in Ms. Javice.  *See* Concannon Decl. ¶ 16 & Ex. E (Ms. Javice's Answer & Counterclaims in Case No. 122-cv-01621-MN (D. Del.)) at ¶¶ 1, 80-85, 91, 93-96, 103.   JPMC began engaging in a series of pretextual investigations against Ms. Javice.  Ex. E ¶¶ 86-88.  Soon thereafter, JPMC cut off Ms. Javice's access to documents, her Frank email account, and all Frank and JPMC communication platforms on which she had previously conducted Frank business.  *See id.* ¶¶ 14, 96.  JPMC then unilaterally elected to shut down Frank and publicly blame Ms. Javice for JPMC's failures.  *See id.* ¶¶ 1, 85, 95, 103.

On November 4, 2022, JPMC wrongfully terminated Ms. Javice's employment.  *Id.* ¶ 98.  On December 20, 2022, Ms. Javice filed an action against JPMC in Delaware Chancery Court due to JPMC's failure to honor its contractual commitment to advance Ms. Javice's legal fees to defend against JPMC's wrongful and pretextual actions.  *See Javice v. JPMorgan Chase Bank, N.A. et al.*, C.A. No. 2022-1179-KSJM (Del. Ch.).  Two days later, on December 22, 2022,

JPMC filed a retaliatory action against Ms. Javice in the U.S. District Court for the District of Delaware, asserting (among other baseless claims) two private causes of action against Ms. Javice for alleged violations of the federal securities laws.  *See* Concannon Decl. ¶ 17 & Ex. F (JPMC's Complaint in Case No. 122-cv-01621-MN (D. Del.)) at ¶¶ 186-201.  On May 8, 2023, the Delaware Chancery Court concluded that JPMC is legally obligated to cover certain of Ms. Javice's legal defense costs.  *See* Concannon Decl. ¶ 18 & Ex. G (May 8, 2023 Hr'g Tr. in Case No. 2022-1179-KSJM (Del. Ch.)) at 26.

Around the time of its private and retaliatory lawsuit, JPMC began working with the SEC and the Government to bring claims against Ms. Javice—co-opting taxpayer-funded governmental resources for its private gain.  Both the SEC and the Government have investigative files comprising—almost exclusively—cherry-picked third-party documents that were provided to them by JPMC.  In addition to coordinating with JPMC, the SEC and the Government also assisted each other by collaborating and sharing documents and information across the agencies.  Neither the SEC nor the Government sought or obtained documents or testimony from Ms. Javice directly before filing their actions against her.

The SEC's Complaint, filed on April 4, 2023 and announced publicly on the SEC's website, alleges that Ms. Javice defrauded JPMC by making misrepresentations about how many "users" Frank had to entice an acquisition by JPMC.  Dkt. No. 1 ¶¶ 1-7.  The Government's criminal complaint against Ms. Javice, filed under seal on March 31, 2023 and publicly released on April 4, 2023, and indictment, obtained on May 18, 2023, likewise allege that Ms. Javice "engaged in a scheme to defraud by submitting false and fraudulent statements and representations about TAPD, Inc., d/b/a Frank ... and its user data[.]"  *See* Concannon Decl. ¶ 19 & Ex. H (Criminal Indictment in Case No. 123-cr-00251-AKH (S.D.N.Y.)) ¶ 2; *see also*

Concannon Decl. ¶ 20 & Ex. I (Criminal Complaint in Case No. 123-cr-00251-AKH (S.D.N.Y.)).  In their pleadings, the SEC and the Government mirror the unproven allegations set forth in JPMC's private litigation against Ms. Javice and cite and refer to the same selective set of documents on which JPMC relies.  *See, e.g.*, Dkt. No. 1 ¶¶ 5, 22, 35, 43, 46, 49, 53, 59-65, 69, 72, 88, 91; Ex. I ¶¶ 18-19, 21-25, 27, 30-33 (confirming Government's criminal allegations against Ms. Javice rely heavily on "records" and "documents obtained from JPMC"); *see also* Ex. B (SEC press release thanking the Government for assisting the SEC's investigation).

### C.   SEC Initially Proposes Ambitious Discovery Schedule, Backtracking to Deprive Ms. Javice of Evidence Critical to Her Defense, While Continuing to Investigate

From the inception of this case, the SEC has pursued an ambitious discovery and trial schedule, making clear its intent to immediately proceed to discovery, despite its awareness of the Government's parallel criminal action and JPMC's Delaware action.  On May 19, 2023, the SEC and Ms. Javice's counsel met and conferred, at the SEC's request, concerning a Case Management Plan.  During that call, the SEC proposed a brisk pre-trial schedule, which accepted nearly all of the default time periods set forth in this Court's template.  *See* Dkt. No. 26-1; *see also* Concannon Decl. ¶ 5.  The SEC also indicated that it would begin production of the investigative file on a rolling basis, on or around the date of the initially scheduled Rule 26 disclosures—June 21, 2023.  *See* Dkt. No. 26-1.  The SEC proposed that the parties **complete** fact discovery by October 5, 2023.  *See id.* at 2-3.

On May 23, 2023, Ms. Javice agreed to the SEC's proposed Case Management Plan, memorializing the SEC's statements concerning the production of the investigative file.  Dkt. No. 26-2; *see also* Concannon Decl. ¶ 6.  Ms. Javice provided the SEC with a proposed Protective Order and served her first set of document requests, with a return date of June 22, 2023.  Dkt. Nos. 26-3 & 26-4; *see also* Concannon Decl. ¶¶ 7-8; Ex. A at 14.

On May 24, 2023, the Government filed its application to intervene and stay discovery, Dkt. No. 19, in which the Government told this Court that the SEC "takes no position on the request for a stay." Dkt. No. 20 at 1, 9; *see also* Ex. A at 11 ("The SEC takes no position with regard to the stay of discovery requested by the Government[.]"). On May 30, 2023, the SEC asked Ms. Javice to agree to an extension of time for the SEC to serve its responses and objections to her first set of document requests from June 22, 2023 to "30 days following the Court's ruling on the stay motion." Ex. A at 8. Counsel to Ms. Javice responded that "[w]e cannot agree to th[at] proposal." *Id.* at 7. The SEC proposed a meet and confer to "see if we can try to resolve this without going to the Court." *Id.* at 6. On June 1, 2023, the parties met and conferred. Concannon Decl. ¶ 9. The SEC suggested that it would be willing to agree to production of "third-party documents" comprising most of the investigative file within 14 days of this Court's order on the Government's motion to stay. *See id.* ¶ 11. Counsel to Ms. Javice agreed to consider the SEC's proposal. *Id.* Shortly thereafter, counsel to Ms. Javice proposed a reasonable compromise—that if the SEC would agree to promptly produce "third-party documents in its possession, custody, or control," then Ms. Javice would agree that the SEC's responses to Ms. Javice's first set of document requests and additional document production could be completed within 14 days of any order by this Court on the Government's motion to stay. *Id.* ¶ 12; Ex. A at 3-4. The SEC rejected Ms. Javice's offer of compromise. Concannon Decl. ¶ 12; Ex. A at 3 ("We can't agree to that.").

On June 2, 2023, the SEC submitted a letter motion to this Court, seeking an extension of time to respond to Ms. Javice's first set of document requests and to begin producing responsive documents from June 22 to an unspecified date 21 days after this Court's order on the Government's stay motion. Dkt. No. 25. The SEC took the remarkable position that the mere

pendency of the Government's motion to stay should prevent it from having to take immediate steps to prepare to produce relevant and responsive documents within its possession, custody, or control upon an order of this Court denying the stay. *Id.* at 1-2. In that letter, the SEC also, for the first time, "advise[d]" the Court and Ms. Javice that "[a] stay of discovery in this action would not preclude the SEC from continuing its investigation" or "issuing investigative subpoenas for documents and testimony" regarding this case. *Id.* at 2. The SEC further informed this Court and Ms. Javice of its intention to ***withhold*** from Ms. Javice any documents obtained during the SEC's post-filing investigation until "the Court ultimately lifts any stay it may grant." *Id.* at 2-3. The SEC's professed intention to use its investigative powers—rather than the Federal Rules of Civil Procedure—to continue to gather evidence directly relevant to Ms. Javice's defense during the pendency of any stay while ***concealing*** that very evidence from Ms. Javice "is both highly unusual and an abuse of this Court's processes." *See* Dkt. 26 at 2-3. The SEC declares license to file an enforcement action against Ms. Javice, stay the action during the pendency of the parallel criminal action, and use its investigative subpoena powers and other tools in the SEC's arsenal to continue to gather evidence (including through subpoenas for documents and sworn testimony and witness interviews conducted under the specter of 18 U.S.C. § 1001), all without having to produce a ***single*** document, transcript, or interview note to Ms. Javice until the stay is lifted. As discussed below, this is the very definition of prejudice.

## ARGUMENT

This Court should deny the Government's motion and put a stop to the SEC's and the Government's coordinated gamesmanship and abuse of judicial process. The Government has not, and cannot, meet its burden of justifying the "extraordinary remedy" of a stay, since any stay of discovery is directly and severely prejudicial to Ms. Javice. *See Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (citation omitted). Nor is there

anything "extraordinary" about this case that requires a stay; the Government "can point to nothing that suggests that the dilemma [it] face[s] is more pointed or difficult than in any other case of parallel proceedings." *Id.* at 578.  As Judge Rakoff has stated:

> The U.S. Attorney's argument, therefore, boils down in the end to its standard complaint that the defendants are getting a "special advantage" because, if they were only facing a criminal indictment, they would not be entitled to [discovery] at this time.  But the defendants are ***not just facing a criminal indictment***; they are also facing a ***very serious SEC civil action***, and they are thus ***fully entitled*** to the timely discovery that federal law grants them in defending such an action.

*SEC v. Saad*, 229 F.R.D. 90, 92 (S.D.N.Y. 2005) (emphasis added).  This Court should similarly hold.  In the alternative, this Court should enter, at most, a ***limited*** stay of deposition discovery, permitting document discovery to begin immediately.

### A.    The Government Has Not Met Its Burden to Establish Any Justifiable Basis For a Stay

The party "seeking a stay bears the burden of establishing its need." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012) (internal quotation marks and citation omitted).  In deciding whether the government has met its burden to stay parallel SEC proceedings, district courts frequently rely on the following factors "as a rough guide":

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case;
> 2) the status of the case, including whether the defendants have been indicted;
> 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;
> 4) the private interests of and burden on the defendants;
> 5) the interests of the courts; and
> 6) the public interest.

*See id.* at 99 (quoting *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)); *see also SEC v. Chakrapani*, No. 09 Civ. 325(RJS), 2010 WL 2605819, at *10 (S.D.N.Y. June 29, 2010).  These factors do not, however, replace this Court's studied judgment.  *See Louis Vuitton*, 676 F.3d at 99 (cautioning against

application of "check list[s]" and "mechanical devices").  Nor does the weight of these factors, individually or in combination, ever *require* the district court to grant a stay.  *Id.* at 98 (holding that "the Constitution rarely, if ever, *requires* such a stay").  Prejudice is, by far, the most important factor.  *See Chakrapani*, 2010 WL 2605819, at *10; *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("Balancing these factors is a case-by-case determination, with the basic goal being to *avoid prejudice*.") (emphasis added).

Here, the Government's request for a stay of discovery is "an extraordinary remedy appropriate for extraordinary circumstances."  *Weil v. Markowitz,* 829 F.2d 166, 174 n.17 (D.C. Cir. 1987).  The Government does not carry its burden.

### 1.   Overlapping Issues and Mere Fact of Indictment Do Not Warrant a Stay

The Government argues "that the criminal and civil cases involve essentially identical facts and issues," and that Ms. Javice already has been indicted.  Dkt. No. 20 at 8.  In this unique case, both of these factors weigh ***against*** the imposition of a stay.

As detailed above, ***both*** the SEC's and the Government's action arise from the ***same*** evidence selectively cherry-picked and provided by JPMC to the SEC and the Government in furtherance of JPMC's effort to co-opt limited governmental resources in connection with its private vendetta against Ms. Javice.  JPMC—a private, well-resourced bank—appears to have been the ***primary*** (if not ***sole***) source of materials supporting the SEC's and the Government's allegations.  Ms. Javice is entitled to expeditiously defend herself against both the SEC's and the Government's baseless claims, and to put the SEC's reliance on JPMC to the test in the SEC action by immediately receiving the entirety of the SEC's investigative file—which the SEC has stated is substantially comprised of third-party documents, *see* Concannon Decl. ¶ 10—and proceeding to fact depositions, expert discovery, summary judgment, and trial.  This is the rare

case where the Government and third parties have sole control of the majority of documentary evidence necessary to uncover the flaws in their allegations of fraud, and the ***defendant*** is requesting to proceed with discovery in a parallel civil proceeding so she can gain swift and immediate access to the evidence she needs to disprove those allegations. The fact that "[c]ivil discovery might reveal aspects of the government's criminal case or result in inconsistent statements if witnesses are questioned more than once," is a "risk[] that the government and the SEC run when they elect to pursue parallel investigations and prosecutions." *O'Neill*, 98 F. Supp. 3d at 224.

Moreover, "[n]othing in the Constitution" precludes this Court from permitting simultaneous litigation of the SEC's and the Government's contemporaneously-filed criminal and civil actions, even where they concern the same subject matter and an indictment has issued. *Nosik v. Singe*, 40 F.3d 592, 596 (2d. Cir. 1994); *SEC v. Credit Bancorp*, 738 F. Supp. 2d 376, 389 (S.D.N.Y. 2010) (holding that "no general federal constitutional, statutory, or common law rule bar[s] the simultaneous prosecution of separate civil and criminal actions by different federal agencies against the same defendant involving the same transactions") (citation omitted). Rather, the ***presumption*** is that this action and the criminal action should proceed in parallel and "in the normal course," and there is no reason that this Court needs to deprive Ms. Javice of her right to a timely defense of the SEC action, simply because some discovery in the SEC action also relates to the criminal action. *SEC v. Saad*, 384 F. Supp. 2d 692, 693 (S.D.N.Y. 2005).

Here, the Government's perfunctory and boilerplate arguments that "the Criminal Case and this case involve the same alleged fraudulent scheme … [and] virtually identical facts, witnesses, issues," and that Ms. Javice already has been indicted, Dkt. No. 20 at 8-9, are insufficient to meet the Government's "extraordinary burden" to support a stay. The

Government wholly fails to explain to this Court *why* mere overlap between its action and the SEC's action and the status of the criminal action actually matter to *this* case. *See United States v. Dist. Council of N.Y. City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, No. 0 Civ. 5722 (CSH), 1991 WL 243385, at *4 (S.D.N.Y. Nov. 8, 1991) (holding Government "must make a showing that special circumstances ... actually exist in the present case").

Thus, the mere fact that the SEC and the Government have elected—in their sole discretion—to simultaneously file parallel proceedings involving "essentially identical facts and issues," *see* Dkt. 20 at 9, does not justify a stay of discovery in the SEC action over Ms. Javice's vehement objection. *See SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2009 WL 1531854, at *3 (D. Ariz. June 1, 2009) ("The civil case, like the criminal case, asserts serious violations of the securities laws, and Defendants have a strong interest in being able to defend themselves against the SEC's allegations as quickly as possible."). Where, as here, "civil regulators … and the Government [have] used parallel proceedings to [their] advantage," this Court can and should exercise its discretion to deny a stay. *SEC v. Sandifur*, No. C05-1631 C, 2006 WL 3692611, at *2 (W.D. Wash. Dec. 11, 2006); *see also SEC v. Oakford Corp.*, 181 F.R.D. 269, 270 (S.D.N.Y. 1998) (observing that governmental agencies are quick to bring parallel proceedings, but "generally loathe to furnish discovery in the civil case until the criminal case is completed—for to do so would undercut the informational advantage enjoyed by the government in the criminal case"). As Judge Rakoff aptly stated in *Saad*:

> Although applications for a stay similar to the one here made by the U.S. Attorney are not uncommon in such "parallel proceedings" situations, they are not without their *bizarre aspects*. It is *bewildering enough* that Congress has decreed that, even though someone facing the potentially ruinous financial penalties of an SEC civil complaint should be accorded substantial discovery in order to defend herself, the same defendant facing the even more severe penalties of a criminal action should barely receive any discovery at all. But it is stranger still that the U.S. Attorney's Office, having closely coordinated with the SEC in bringing

simultaneous civil and criminal actions against some *hapless defendant*, should then wish to be *relieved of the consequences* that will flow if the two actions proceed simultaneously.

229 F.R.D. at 91 (emphasis added).

> **2.    Ms. Javice Would Be Directly and Severely Prejudiced by Any Delay in the Litigation of This Action and There is No Prejudice to the SEC or Government of Proceeding**

In seemingly oblivious disregard to the consequences of its own actions, the Government remarkably asserts that "[a] stay of discovery will not prejudice any party," Dkt. No. 20 at 9, and that "the fairness, efficiency, and public good resulting from a stay of discovery outweighs the defendant's *preference*," *id.* at 1 (emphasis added).   Contrary to the Government's self-serving assertions, the SEC's and the Government's *mere unproven allegations* already have severely prejudiced Ms. Javice, and any delay to Ms. Javice's defense *exponentially increases* the prejudice to her.   Ms. Javice's life is on the line here, and time is of the essence.   The Government's application is not "routine[]."   *See id.* at 6.   It has grave consequences for Ms. Javice and her defense of this action.   This Court should "decline[] to resolve this intra-Government conflict by entering a stay at the expense of [Ms. Javice's] rights."   *See SEC v. Curshen*, No. 11-20561-JLK, 2012 WL 12864338, at *3 (S.D. Fla. May 25, 2012).

The SEC and the Government have alleged that Ms. Javice has committed serious violations of federal securities law and the criminal bank and wire fraud statutes.   They have called into question Ms. Javice's previously unblemished reputation and credibility.   Ms. Javice deserves a timely opportunity to clear her name through the full presentation of evidence.   *See, e.g.*, *SEC v. Jones*, No. 04 Civ. 4385(RWS), 2005 WL 2837462, at *2 (S.D.N.Y. Oct. 28, 2005) (denying United States' motion to intervene because, among other things, the defendant's "reputation and credibility have been called into question, and he deserves a timely opportunity to clear his name"); *see also, e.g.*, *SEC v. Blaszczak*, No. 17-cv-3919 (AJN), 2018 WL 301091,

at *2 (S.D.N.Y. Jan. 3, 2018) (recognizing "legitimate concerns" that a stay "will delay the Defendants' attempt to clear their names, ... could result in the loss of evidence, and [] will subject the Defendants to increased legal expenses").  Moreover, Ms. Javice's assets have been seized, she is currently unemployed, and the pendency of this SEC action continues to cloud her future career prospects and personal life.  *See Jones*, 2005 WL 2837462, at *2 (collecting cases). Ms. Javice is entitled to seek and obtain discovery in this action now, lest—even after acquittal in the criminal action—she be forced to start completely over again in this action, only with the SEC's lower civil burden of proof and deck heavily stacked in the SEC's favor.  *See, e.g.*, 8 Bus. & Com. Litig. Fed. Cts. § 92:36 (5th ed.) ("In light of the SEC's extensive investigative powers and pretrial preparation, and the lower burden of proof that applies in civil court proceedings, it can be difficult for defendants to prevail on substantive grounds.").  Ms. Javice does not merely "prefer[]" moving forward with an expeditious defense to the SEC action.  *See* Dkt. No. 20 at 1. Rather, Ms. Javice would be ***directly*** and ***severely prejudiced*** by a stay of discovery in this action.

Moreover, the SEC's recent correspondence to this Court has exposed the true objectives behind the Government's application.  Having rushed to file parallel criminal and civil litigation against Ms. Javice based on nothing more than JPMC's say-so, the Government now wants to ensure that Ms. Javice is precluded from mounting a defense in the criminal case, while the SEC continues to clandestinely gather evidence relevant to Ms. Javice's defense and share that evidence with the Government, but ***not*** Ms. Javice.  *See* Dkt. No. 25 at 2-3.  This is undeniably prejudicial and should not be countenanced by this Court.  The SEC alleges serious violations of federal securities law against Ms. Javice.  She faces "potentially ruinous financial penalties." *Saad*, 229 F.R.D. at 91.  Ms. Javice has an overwhelmingly "strong interest in being able to

defend [herself] against the SEC's allegations as quickly as possible." *Fraser*, 2009 WL 1531854, at *3; *see also England Sports Network, LP v. Alley Interactive, LLC*, No. 22-cv-10024-ADB, 2023 WL 2140474, at *4 (D. Mass. Feb. 21, 2023) (noting that because defendant "appears to want the civil case to move forward, ... [t]he Court sees no reason to override [defendant's] own evaluation of the prejudice that may result from the civil case proceeding").

Ms. Javice's defense of the SEC action also will be prejudiced by any indeterminate stay of discovery. The delay proposed by the Government—that no discovery in the SEC action commence until **after** conclusion of the criminal action—increases the likelihood that witnesses will forget critical information, witnesses will not be available for depositions or trial, and that exculpatory documents critical to Ms. Javice's defense may be lost or destroyed. *See, e.g.*, *SEC v. Zouvas*, No. CV-17-00427-PHX-SPL, 2018 WL 11241077, at *4 (D. Ariz. Oct. 5, 2018) ("The SEC also argues that a stay would cause witnesses' memories to fade, and its evidentiary presentation will be less effective.").[3] The SEC has had months to build its case, working in tandem with JPMC and the Government. Ms. Javice has had no such opportunity. Ms. Javice is entitled under the Federal Rules of Civil Procedure to timely obtain documents and information relevant to the claims and defenses asserted in the SEC action. That some of that discovery may also be relevant to the criminal case has no bearing on the Government's application for a stay,

---

[3] Here, the SEC argues that Ms. Javice's objection to the stay is "based on speculation that documents in the SEC's possession may contain 'exculpatory' information critical to her defense of the SEC action." Dkt. No. 25 at 2. The SEC is wrong. Ms. Javice is not speculating; rather, Ms. Javice knows that the SEC's investigative file is largely comprised of documents provided to the SEC **by JPMC**. Ms. Javice is familiar with the contents of those documents from her tenure at JPMC and Frank—she has simply been deprived of her access to those documents through her wrongful termination by JPMC. *See* p. 4, *supra*; Ex. E ¶¶ 14, 96, 98. Counsel is therefore confident that those documents will provide evidence critical to Ms. Javice's defense. Yet the Government and the SEC are colluding to deprive Ms. Javice of access to their contents for as long as possible.

particularly where, as here, the SEC and the Government decided to file their cases at the same time, and the SEC professes to take no position on the Government's request for a stay.

Finally, "the strongest case for deferring civil proceedings until after completion of criminal proceedings" is where there is a serious risk of "undermin[ing] the [defendant's] Fifth Amendment privilege" by forcing the defendant to choose between asserting her Fifth Amendment rights or fully defending against the civil case. *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980). But Ms. Javice opposes the stay and is prepared to proceed. That is her constitutional right.

The Government does not offer any specific factual basis or argument providing this Court with grounds to ignore the "hardship, inequity, [and] injustice," that will clearly be inflicted upon Ms. Javice as a result of a stay of discovery in the SEC action, in favor of further loading the scales for the Government and allowing the SEC and the Government to deprive Ms. Javice of evidence to which she is entitled as a matter of law and under the Federal Rules of Civil Procedure to defend herself. Thus, the overwhelming prejudice to Ms. Javice that would result from a stay of this action weighs heavily in favor of denying the stay.

### 3.    A Stay of Discovery Will Waste Judicial Resources and Impose Unnecessary Burdens on this Court

The Government's argument that "[c]onsiderations of judicial economy also weigh in favor of granting a stay of discovery," Dkt. No. 20 at 9-10, likewise fails. Contrary to the Government's assertion, a stay would impose additional burdens on this Court and is antithetical to this Court's interest "in the expeditious resolution of cases." *Chakrapani*, 2010 WL 2605819, at *11 (quoting *Travelers Cas. & Sur. Co. v. Vanderbilt Grp., LLC*, No. 01 CIV. 7927(DLC), 2002 WL 844345, at *4 (S.D.N.Y. May 2, 2002)).

The Government argues that "[i]ssues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action," Dkt. No. 20 at 9-10, but this both assumes the outcome of the criminal action and turns the issue on its head.  It is *far* more likely that the Government—which must prove its claims by a standard of proof "beyond a reasonable doubt"—will fail to meet its burden and that Ms. Javice will be acquitted.  Or, "[i]t is possible that the Criminal Case could result in a mistrial leaving the Criminal Case unresolved and this case stayed with discovery open."  *SEC v. Balwani*, No. 5:18-cv-01603-EJD, 2019 WL 2491963, at *3 (N.D. Cal. June 14, 2019).  In any event, even if resolving the criminal action could streamline *some* issues in this action, this Court should "still be wary of abridging [Ms. Javice's] procedural and discovery rights in an effort to save resources and time."  *Id.* (citing *SEC v. Kanodia*, 153 F. Supp. 3d 478, 483 (D. Mass. 2015)).

Simply put, the Government's position with regard to "judicial economy" here is both presumptuous and illogical.  Absent anything other than a total victory for the Government, this Court and Ms. Javice would be forced to start all over again in this action following the conclusion of the criminal action, now with Ms. Javice belatedly having access to the tools afforded her under the Federal Rules of Civil Procedure.  The Government's position will cause delay and interfere with judicial administration, this Court's ability to put in place a Case Management Plan, and "the just, speedy, and inexpensive determination of" this action.  *See* Fed. R. Civ. P. 1; *Chakrapani*, 2010 WL 2605819 at *11.

### 4. The Public Interest Favors Prompt Resolution of the SEC's Case

The Government's final contention that the public has an interest in preventing Ms. Javice from obtaining documents to which she is entitled under the Federal Rules of Civil Procedure in the SEC action, merely because those documents might also enable her to prepare a defense in the criminal action, Dkt. No. 20 at 10-13, is similarly unavailing.  Indeed, the

17

Government's assertion that it is somehow "improper[]" for a defendant whom two governmental agencies have chosen to simultaneously charge criminally and civilly to prepare her best possible defense, *id.* at 1, smacks of governmental hubris.  Presumably, the public's interest is in safeguarding faith in the U.S. system of jurisprudence by ensuring that the presumption of innocence is maintained and that only those proven guilty beyond a reasonable doubt are convicted, not in further tilting the scales of justice in favor of the Government. *O'Neill*, 98 F. Supp. 3d at 224 ("[E]vidence supporting an indicted criminal case ought to be able to survive scrutiny, and the government should not be so invested in withholding information until disclosure is required—after all, the goal is a just resolution in both the civil and criminal cases, and there is no doubt that confidence in an outcome is highest where the evidence is known and can be tested.").

Moreover, the public has an interest in fair, open, and expeditious ***civil*** legal proceedings. *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV 14-3053-MWF (AFMx), 2018 WL 11242039, at *6 (C.D. Cal. Apr. 6, 2018).  Ms. Javice, who is the victim of the Government's and the SEC's coordinated attacks, simply wants to play by the rules, avail herself of the privileges afforded to her by the Federal Rules of Civil Procedure, and put the baseless allegations of the criminal and civil actions behind her as quickly as possible.  Again, the Government and the SEC—not Ms. Javice—chose when and how to file their parallel criminal and civil actions.  "[T]o the extent that this is a problem, it is of [the Government's] own making. *Balwani*, 2019 WL 2491963, at *4.

The Government and the SEC each accompanied their actions against Ms. Javice with a public media campaign, asserting with governmental pomp and circumstance and gravitas, that Ms. Javice—a 31-year-old self-made entrepreneur—perpetrated a massive fraud against JPMC,

one of the largest and most well-established global financial firms.   The SEC's and
Government's media strategy contributed to substantial (and unfair) public coverage of this
action, and has resulted in the public having an interest in seeing this action promptly resolved.
*See, e.g.*, *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995) (public interest
in resolving a civil case is higher when it is the subject of an "inordinate amount of media
attention").   The public has a strong interest—in the wake of a tsunami of media attention
fomented by the SEC and the Government—in seeing this action promptly adjudicated.[4]  Having
created a media maelstrom, the SEC and the Government must now live with its consequences.
*See*, *Oakford Corp.*, 181 F.R.D. at 273 (admonishing the SEC and noting that "[t]o use the
federal courts as a forum for filing serious civil accusations that one has no intention of pursuing
until a parallel criminal case is completed is *a misuse of the processes of these courts*")
(emphasis added).   The public has an interest in seeing discovery and this action proceed apace.
*See O'Neill*, 98 F. Supp. 3d at 224.

### B.    Any Stay in this Case Should Apply Only to Depositions of Fact Witnesses, Not to Document Discovery

For the reasons above, Ms. Javice objects to the entry of *any* stay of this action.   But if
this Court is inclined to entertain a stay, then it should exercise its judicial discretion to impose
only a *limited* stay of fact depositions pending resolution of the criminal case, rather than putting

---

[4]    The SEC's media power cannot be overstated.   A recent "tweet" by the SEC about a
litigated complaint obtained over *6.2 million* views, with Chair Gary Gensler's "re-tweet"
gaining *5.4 million* views in just two days.   *See* Tweet by SEC (June 5, 2023), available at
https://twitter.com/SECGov/status/1665779371108335618; Tweet by Gary Gensler (June 5,
2023), available at https://twitter.com/GaryGensler/status/1665815051846950917.   The SEC also
uses "hashtags" and other promotional devices to ensure that its unproven allegations obtain the
maximum level of attention.   *See* Kurt Wolfe, Insight: #HereWeGoAgain – The SEC's Use of
Hashtags Raises New Policy Questions, Bloomberg Law (June 28, 2019), available at
https://news.bloomberglaw.com/securities-law/insight-herewegoagain-the-secs-use-of-hashtags-
raises-new-policy-questions.   The SEC does not remove press releases from its website, even
after defendants are found not liable, nor does it update those press releases to restore the
defendant's reputation.

on hold *all* discovery.  *See Saad*, 229 F.R.D. at 91; *Kanodia*, 153 F. Supp. 3d at 483; *SEC v. Gilbertson*, No. 16-cv-3779 (DWF/HB), 2017 WL 5172313, at *3 (D. Minn. May 12, 2017). This reasonable alternative would permit immediate document discovery—including timely production to Ms. Javice of any new documents added to the SEC's investigative file through its purported ongoing investigation—rather than endorsing the SEC's and the Government's attempts to conceal relevant evidence from Ms. Javice for as long as possible.  And, this approach would alleviate at least some of the problems created by a full stay, by furthering judicial economy, reducing the prejudice to Ms. Javice, imposing only nominal costs of production on the SEC, and reaching an appropriate balance of competing interests.  *See In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988168, at *7 (N.D. Ohio Nov. 7, 2002) (concluding that the Court "can take measures other than imposing a complete stay of discovery that would minimize the Government's concerns while, at the same time, allowing discovery to proceed" and denying stay).

Moreover, the Government's objections to anything less than a full stay of discovery are both speculative and unconvincing.  The Government claims that a full discovery stay is necessary to prevent "asymmetrical discovery," should Ms. Javice assert her Fifth Amendment rights.  Dkt. No. 20 at 4, 12-13.  Setting aside the irony of this argument—since asymmetrical discovery is *precisely* what the Government is seeking to obtain here—Ms. Javice has "not yet invoked [her] Fifth Amendment privileges in connection with discovery."  *Chakrapani*, 2010 WL 2605819, at *11 & n.5 (assertion of Fifth Amendment privilege in answer did not support stay).  Moreover, the Government's argument is *irrelevant* to the *criminal* case or any alleged prejudice to the Government.  A defendant in a criminal case, by definition, *always* has the right

to invoke her Fifth Amendment privilege against self-incrimination without suffering an adverse inference at trial.  *See United States v. Okatan*, 728 F.3d 111, 116 (2d Cir. 2013).

It also bears emphasis that should Ms. Javice assert her Constitutional privilege in the SEC case, any purported detriment would be to the **SEC**, not the Government (and would have to be weighed against the SEC's entitlement to an adverse inference).  But the SEC consistently has asserted neutrality with regard to the Government's motion for a stay.  *Compare* Dkt. No. 20 at 1, 9 (asserting the SEC takes no position), *with* Dkt. 25 at 2 (writing to "advise" Court that the SEC will continue seeking third-party discovery regardless of whether a stay is granted). Accordingly, "there is no need for the government to intervene ... to vindicate interests that the SEC is fully capable of representing on its own."  *Chakrapani*, 2010 WL 2605819, at *11.

## CONCLUSION

For the foregoing reasons, Ms. Javice respectfully requests that this Court deny the Government's motion.

Dated:  June 7, 2023                                    Respectfully submitted,

Alex Spiro
Sarah Heaton Concannon
Maaren A. Shah
JP Kernisan
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
alexspiro@quinnemanuel.com
sarahconcannon@quinnemanuel.com
maarenshah@quinnemanuel.com
jpkernisan@quinnemanuel.com

*Attorneys for Defendant Charlie Javice*