UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

  - against –

CHARLIE JAVICE,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF Case

No. 23 Civ. 02795 (LJL)


# THE GOVERNMENT'S REPLY
# IN SUPPORT OF A STAY OF DISCOVERY


DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

Micah F. Fergenson
Dina McLeod
Assistant United States Attorneys

    *- Of Counsel -*

**PRELIMINARY STATEMENT**

The United States of America, by and through Damian Williams, the United States Attorney for the Southern District of New York (the "Government"), respectfully submits this reply in response to defendant Charlie Javice's opposition brief (Dkt. 29 ("Def. Br.")), and in further support of the Government's application to stay discovery in the above-captioned case (the "SEC Case") until the conclusion of the parallel criminal case, *United States v. Charlie Javice*, 23 Cr. 251 (AKH) (the "Criminal Case").[1] For the reasons set forth below and in the Government's opening brief (Dkt. 20 ("Gov't Br.")), this Court should stay discovery in the SEC Case until the conclusion of the trial in the Criminal Case.

**ADDITIONAL BACKGROUND**

In her opposition, Javice omits any mention of material developments in the Criminal Case that contradict and undermine her arguments. In particular, on June 6, 2023—one day prior to the filing of Javice's opposition—the Government and Javice appeared for their initial conference before Judge Hellerstein in the Criminal Case, at which the Government: (1) produced voluminous Rule 16 discovery to the defense; and (2) requested a trial date in October 2023—which was in fact scheduled, but then adjourned *sine die* at Javice's request.

With respect to discovery, prior to the start of the conference, the Government provided Javice's counsel a production cover letter and a hard drive containing discovery materials, pursuant to Federal Rule of Criminal Procedure 16, in the Criminal Case. The Government confirmed the same on the record, explaining that the Government "actually handed the defense a hard drive today, containing all or, if not all, the vast majority of the Rule 16 discovery in our possession

---

[1] The Government's threshold motion to intervene, pursuant to Rule 24 of the Federal Rules of Civil Procedure, is unopposed.  (*See* Def. Br. 1 n.2).

2

presently." (Ex. A (June 6, 2023 Tr.) at 4). The Government described "the size of the discovery" it had just produced, explaining that "the data is about 90 gigabytes, and to put it in a less technical way, it's about 106,000 files" consisting primarily "of subpoena returns from about 30 different . . . third parties." (*Id.* at 4). The discovery also included "three warrants related to cellphones," one of which was "for the cellphone that Ms. Javice had on her at her arrest," the contents of which the Government had not yet accessed. (*Id.* at 4-5). A fourth warrant, for the seizure of assets in bank accounts, was "the extent of the warrants in the case." (*Id.* at 5-6). Finally, the Government noted that the criminal "investigation is ongoing, and as we receive additional materials, we will be providing them to the defense" promptly. (*Id.* at 6).

With respect to scheduling, the Government explained that the "defense has requested . . . that the Court set another conference in about 45 days," but "[t]he government's ready to try the case," "prepared to set a trial date today," and is "available in October" for the trial. (*Id.* at 8). Judge Hellerstein responded that he would "set a trial date when we're all ready, then I'll set it quickly." (*Id.* at 8). Judge Hellerstein set a conference for approximately 45 days later, on July 13, as requested by the defense. (*Id.*).

The Government then moved to exclude time under the Speedy Trial Act until the date of the conference requested by the defense, to which the defense objected. (*Id.* at 8-9). In response, the Government renewed its request "to set a trial date in October," estimating that the trial would take "eight to ten trial days." (*Id.* at 9). Judge Hellerstein accordingly scheduled trial to begin October 16. (*Id.*). Javice—immediately abandoning her objection to the exclusion of Speedy Trial time— requested that trial *not* proceed on that date and that a trial date not be set. (*Id.*).

3

**ARGUMENT**

Javice's arguments in opposition to a stay are meritless. Omitting any mention of the conference before Judge Hellerstein or the Government's production of Rule 16 discovery the day prior, Javice principally complains about potential delay and, without basis, questions the Government's good faith. Those arguments are completely undermined, however, by Javice's opposition to the setting of a criminal trial date, and the Government's production of discovery. Further, Javice does not dispute that the Criminal Case and the SEC Case involve virtually identical facts and issues. Nor can Javice claim, having already received a substantial production of Rule 16 discovery materials, that she will not receive the same discovery due all criminal defendants in this District. Instead, the record establishes that Javice is seeking civil discovery for use in her criminal case—an abuse of the civil process that threatens the integrity of the criminal process.

*First*, Javice's complaints about timing and delay ring hollow in light of the proceedings before Judge Hellerstein where Javice requested an adjournment of the October criminal trial date and opposed even setting a trial date. (*See* Ex. A at 8-9). In her brief, Javice repeatedly emphasizes that her "life is on the line here, and time is of the essence." (Def. Br. 13; *see id.* at 3 ("Ms. Javice must be permitted" to "timely obtain[ ] final resolution" in the actions against her, including the "criminal action"); *id.* at 11 ("a timely defense"); *id.* at 13 ("Ms. Javice deserves a timely opportunity to clear her name through the full presentation of evidence."); *id.* at 15 (referencing a purported "indeterminate stay of discovery" and a purported "delay proposed by the Government"); *id.* at 19 ("The public has a strong interest . . . in seeing this action promptly adjudicated."). But it is *Javice* who caused the delay of the criminal trial—a trial that was, prior to

4

Javice's objection, scheduled for a mere four months from today. Javice cannot claim prejudice due to delay when she herself has manufactured that delay.

*Second*, Javice makes equally hollow claims about discovery, appearing to question—without basis—the Government's willingness to provide discovery in the Criminal Case. (*See* Def. Br. 1 (asserting that the Government's request to stay discovery in the SEC Case "is nothing less than a coordinated governmental effort to deprive Ms. Javice of exculpatory evidence"); *id.* at 15 n.3 ("[T]he SEC's investigative file is largely comprised of documents provided to the SEC **by JPMC**. . . . Yet the Government and the SEC are colluding to deprive Ms. Javice of access to their contents for as long as possible.")). Contrary to Javice's baseless accusation, the Government—whose "investigative file[ ]," Javice asserts (as she does with respect to the SEC file), consists "almost exclusively" of documents provided "by JPMC" (Def. Br. 5)[2]—has already provided Rule 16 discovery to Javice.

Putting aside the fact that Javice's unfounded claim came *after* her receipt of Rule 16 discovery from the Government, Javice appears to fundamentally misapprehend the criminal discovery process. Where the SEC provides certain materials from its parallel investigation to the Government, the Government will produce any discoverable materials to a defendant in the

---

[2] In fact—and as Javice well knew from the June 6 pretrial conference, the Government's cover letter to its June 6 production, and the contents of that production—the Government produced materials from approximately "30 different . . . third parties." (Ex. A at 4). Yet Javice still appears to question, without grounds and for reasons unstated, whether JPMC is the "***sole***[ ] source of materials . . . supporting the Government's allegations." (Def. Br. 10). In any event, that JPMC provided relevant records to the Government is unsurprising. JPMC is both the victim of the fraud and the successor to Frank, the company Javice used to perpetrate the fraud. Due to the latter fact, JPMC has in its possession, among other things, Frank's electronic communications, such as emails and Slack messages, including for the accounts that Javice used during her employment at Frank and at JPMC.

criminal case pursuant to Rule 16. Here, more specifically, the SEC recently provided the Government with the materials obtained by the SEC from third parties in its parallel investigation—much (if not all) of which is duplicative of what the Government has already produced to Javice—and the Government is in the process of preparing a production of those materials to Javice. (*See* Dkt. 31 at 1 (SEC explaining that it would not seek to prevent such disclosure)). Thus, Javice's assertion that the Government "wants to ensure that Ms. Javice is precluded from mounting a defense in the criminal case, while the SEC continues to clandestinely gather evidence relevant to Ms. Javice's defense and share that evidence with the Government, but ***not*** Ms. Javice" is utterly baseless. (Def. Br. 14). Simply put, Javice's complaints about a lack of discovery are meritless, and she will not suffer prejudice from a stay of discovery in the SEC case.

*Third*, Javice does not dispute "that the criminal and civil cases involve essentially identical facts and issues." (Gov't Br at 8). Instead, Javice argues unpersuasively that "[i]n this unique case," those "factors weigh ***against*** the imposition of a stay." (Def. Br. 10). But Javice does not explain what makes this case supposedly "unique." (*See* Def. Br. 10-13). Aside from generic quotations of other rulings (*see* Def. Br. 10-13), Javice merely asserts that both the Criminal Case and the SEC Case "arise from the ***same*** evidence" (Def. Br. 10).[3] Even assuming that is accurate, Javice's contention only serves to underscore the Government's point, and highlights the fact that staying discovery in the SEC case would not prejudice Javice, while preserving judicial resources and ensuring the integrity of the criminal process.

---

[3] Javice also asserts, incorrectly, that "the Government and third parties have sole control of the majority of documentary evidence." (Def. Br. 10-11). In fact, as explained above, Javice had already received the Government's Rule 16 discovery *prior* to filing her opposition, and that discovery consists of over 100,000 records from approximately 30 different third parties.

*Fourth*, the record makes plain that Javice is seeking civil discovery for use in her criminal trial—squarely presenting the principal reason that courts routinely stay civil proceedings in favor of a criminal case. (*See* Gov't Br 10-13 (discussing the prejudice to the criminal process from such misuse of the civil process)). Indeed, Javice's counsel expressly told the SEC as much. (*See* Dkt. 31, at 2 n.1 ("[D]efense counsel explained, in substance, that Javice's interest in obtaining documents from the Commission related to her need to defend herself in a private action pending in Delaware *as well as the parallel criminal case*." (emphasis added))). Javice's actions are in accord with that moment of candor with the SEC. While the SEC filed its Complaint in April, Javice served discovery requests on the SEC only after Javice was indicted in the Criminal Case. (*See* Dkt. 31 (noting Javice's May 23 discovery request—a mere five days after the May 18 indictment)).

Likewise, in the private action in Delaware between Javice and JPMC,[4] Javice began efforts to obtain civil discovery only after—and very shortly after—her criminal indictment. The grand jury in the Southern District of New York indicted Javice on May 18, a Thursday. On Sunday, May 21, counsel for Javice[5] asked counsel for JPMC whether JPMC "would agree to the opening of full discovery." (Ex. B (May 21, 2023 email to JPMC counsel)). Javice made this request notwithstanding the fact that, *prior* to her indictment, Javice had *opposed* JPMC's request for a partial lifting of the discovery stay in effect in that case pursuant to the Private Securities Litigation Reform Act (the "PSLRA").[6] (Ex. C (D. Del. Dkt. 36)). On June 1, Javice filed a motion

---

[4] *J.P. Morgan Chase Bank, N.A. v. Charlie Javice and Olivier Amar*, No. 22 Civ. 01621 (MN) (D. Del.).

[5] Javice is represented by the same counsel in the Civil Case, the Criminal Case, and the SEC Case.

[6] *See* 15 U.S.C. § 78u-4(b)(3)(B).

in the Delaware case to lift the PSLRA stay, in which she made clear that she "is not limiting her [discovery] requests to documents that JPMC already shared with the Government." (Ex. D (D. Del. Dkt. 43), at 15). Javice's transparent efforts to use the civil discovery process as an end run around the criminal discovery process jeopardizes the integrity of the criminal process, wastes judicial resources, and is contrary to the public interest.

## CONCLUSION

As set forth in the Government's opening brief, the relevant factors all favor the Government's application for a stay of discovery. And as described above, Javice's arguments in opposition are meritless. This Court should grant the Government's application for a stay of discovery.

Dated: New York, New York
June 12, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/ Micah F. Fergenson
Micah F. Fergenson
Dina McLeod
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2190