```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
SECURITIES AND EXCHANGE COMMISSION,                                 :
                                                                    :
                                Plaintiff,                          :
                                                                    :         23-cv-2795 (LJL)
                -v-                                                 :
                                                                    :         OPINION AND ORDER
CHARLIE JAVICE,                                                     :
                                                                    :
                                Defendant.                          :
                                                                    :
------------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/20/2023

LEWIS J. LIMAN, United States District Judge:

The United States of America (the "Government") moves for an order permitting it to intervene pursuant to Federal Rule of Civil Procedure 24, and to stay the matter until the conclusion of a parallel criminal case pending in this District, *United States v. Charlie Javice*, Case No. 23-cr-251 (AKH). Dkt. No. 19.

For the following reasons, the motion to intervene is granted and the motion to stay the matter is granted.

## BACKGROUND

**I.   The Allegations of the SEC's Complaint**

The United States Securities and Exchange Commission ("SEC") charges Defendant Charlie Javice ("Defendant" or "Javice") with violating Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. Dkt. No. 1. The charges grow out of an alleged scheme to falsely inflate the number of customers at Javice's company, TAPD, Inc. or Frank ("Frank"), in order to fraudulently induce JPMorgan Chase Bank, N.A. ("JPMC") to acquire Frank for $175 million. *Id.* ¶ 1.

Javice founded Frank in 2017, ostensibly as a trusted online source to help students navigate every aspect of the college financial aid process and to provide students a tool to expedite completion of the Free Application for Federal Student Aid ("FAFSA"). *Id.* ¶ 16. In early 2021, a Frank board member approached JPMC about a possible acquisition of Frank. *Id.* ¶ 32. In July 2021, Frank represented to JPMC through, *inter alia*, pitch deck materials approved by Javice, documents in Frank's data room, and statements from Javice, that it had approximately 4.25 million customers. *Id.* ¶¶ 1, 32–38, 43. According to the complaint, however, Frank did not have 4.25 million student customers or their identifying information, but only had identifying information for only about 300,000 students. *Id.* ¶¶ 2, 42. During initial due diligence and follow-up requests, Javice allegedly enlisted the help of a data science professor to use "synthetic data" to supply the missing users for validation prior to the signing of the merger agreement. *Id.* ¶¶ 58–67. Javice then allegedly purchased data from two "data compilers" to generate a list of 4.5 million students with identifying information. *Id.* ¶¶ 73–83. In short, the SEC's complaint alleges that Javice (1) hid the fact that Frank had identifying data for only about 300,000 students; and (2) fabricated data to falsely support Javice's representations. *Id.* ¶ 2.

## II.    The Criminal Indictment

The Government filed its criminal complaint against Javice under seal on March 31, 2023, which was unsealed and publicly released on April 4, 2023, the day after Javice's arrest and the same day the complaint in this case was filed. Dkt. No. 30-9; *see also United States v. Javice*, Case No. 23-cr-251, Dkt. No. 1. On May 18, 2023, based on the same alleged misconduct in the SEC's complaint, a grand jury sitting in this Court indicted Javice on charges of conspiracy to commit wire fraud and bank fraud in violation of 18 U.S.C. § 1349; wire fraud in violation of 18 U.S.C. §§ 2, 1343; bank fraud in violation of 18 U.S.C. §§ 2, 1344; and

securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 140.10b-5.  *See generally* Dkt. No. 30-8; *see also United States v. Javice*, Case No. 23-cr-251, Dkt. No. 18.  The case is currently pending before the Honorable Judge Alvin K. Hellerstein.

On June 6, 2023, Judge Hellerstein held an initial pretrial conference.  The Government, in its reply brief, has represented that it provided a "voluminous Rule 16 discovery to the defense."  Dkt. No. 32 at 2.  In particular, at the initial pretrial conference, the Government gave defense counsel a hard drive with "about 90 gigabytes" of data containing "about 106,000 files."  Dkt. No. 32-1 at 4.  Those files consisted mainly of "subpoena returns from about 30 different third parties."  *Id*.  It also includes "three warrants related to cellphones," *id*., and "an asset seizure warrant for bank accounts," *id*. at 4–5.  The Government stated that it has "produced the vast bulk, if not all," of what it currently had in its possession.  *Id*. at 5.  It also represented that its investigation was ongoing and that as it received additional materials, it would provide them to the defense.  *Id.* at 4, 6.  That discovery was provided one day prior to the filing of Javice's opposition brief on this motion.  Javice's opposition brief makes no mention of these materials.

The parties sparred over the trial date and the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*.  The Government stated that it was prepared to set a trial date and indicated it would be available and ready to try the case in October 2023.  *Id.* at 8.  Judge Hellerstein set a conference date for July 13, 2023, after the defense asked for a conference date in the middle of July.  *Id.*  But after Javice objected to the Government's request to exclude time under the Speedy Trial Act until the date of the conference, the Government requested a trial date in October 2023.  *Id.* at 9.  Judge Hellerstein granted that request and scheduled trial to begin on October 16, 2023.  *Id.*  Javice then relented, stating that she had "a lot of investigation to do," and asked to keep the July 13

3

status conference date with a trial date to be set then, and agreed to the exclusion of time under the Speedy Trial Act. *Id.* at 9–10. Thus, at Javice's request, no date for trial was set, and the next conference in the criminal case is scheduled for July 13, 2023.

## PROCEDURAL HISTORY

The SEC filed its complaint in this case on April 4, 2023. Dkt. No. 1. On May 12, 2023, the Court issued a notice of initial pretrial conference for June 7, 2023. Dkt. No. 13. On May 24, 2023, within a week after the filing of the indictment and before any initial pretrial conference in this case was held, the Government filed this motion to intervene and to stay discovery, along with a memorandum of law in support of the motion. Dkt. Nos. 19–20. On May 25, 2023, the Court issued an order adjourning *sine die* the initial pretrial conference scheduled for June 7, 2023 and scheduled oral argument on this motion. Dkt. No. 21. That same day, the Court issued an order granting the letter motion of Javice for an extension of time to answer until after the Court ruled on the Government's motion. Dkt. No. 23. On June 2, 2023, the SEC filed a letter seeking to adjourn the deadline for responding to Javice's request for the production of documents to 21 days after the Court's ruling on the stay motion, indicating that it took no position on the stay motion, and advising the Court of its intention to continue its investigation with respect to uncharged parties. Dkt. No. 25. Javice submitted a letter response in opposition to the SEC's motion that same day. Dkt. No. 26. On June 7, 2023, Javice filed a memorandum of law and declaration in opposition to the stay motion. Dkt. No. 29. The government filed its reply brief in support of the stay motion on June 12, 2023. Dkt. No. 32. The Court heard oral argument on June 15, 2023. Minute Entry (June 8, 2023).

## DISCUSSION

The Government seeks to intervene for the purpose of requesting a stay of discovery in this action until the conclusion of the criminal case. Dkt. No. 19. It argues that the Court should

4

stay this action because, were it to proceed in advance of the criminal case, it would impair and impede the Government's ability to protect its interest in the enforcement of the federal criminal law. Dkt. No. 20 at 5. It claims, *inter alia*, that allowing discovery to go forward in this civil case would result in asymmetric discovery because Defendant would be able to use civil discovery mechanisms to circumvent the restrictions on discovery in the criminal matter, while the SEC would be unable to use those same mechanisms due to Defendant's likely assertion of her Fifth Amendment rights. *Id.* at 12. The SEC takes no position on the stay motion. Dkt. No. 25 at 1. Javice does not oppose the Government's intervention for the limited purpose of seeking a stay, but opposes the motion for a stay and, in the alternative, argues that any stay should be limited to the taking of deposition testimony and that document discovery should be permitted to proceed. Dkt. No. 29 at 1 n.2, 9.

**I.      Motion to Intervene**

Rule 24(a) of the Federal Rules of Civil Procedure provides for intervention as a right when the party seeking to intervene "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P 24(a)(2). Rule 24(b) authorizes permissive intervention when the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion under Rule 24(b), a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

This Court and others have addressed similar motions. *See, e.g.*, *SEC v. Shah*, 2022 WL 17551937, at *1 (S.D.N.Y. Dec. 9, 2022); *SEC v. Calabrigo*, 2022 WL 4752427, at *3 (S.D.N.Y. Sept. 30, 2022); *SEC v. Shkreli*, 2016 WL 1122029, at *2–3 (E.D.N.Y. Mar. 22, 2016); *SEC v.*

5

*Treadway*, 2005 WL 713826, at *2 (S.D.N.Y. Mar. 30, 2005). The Government is entitled to intervene under Rule 24(a), and will be permitted to intervene under Rule 24(b), for purposes of seeking a stay. *See Treadway*, 2005 WL 713826, at *2 ("Whether couching the decision in terms of mandatory or permissive intervention or simply referring to Rule 24 without specifying the subsection on which they rely, courts in this Circuit have routinely allowed federal or state prosecutors to intervene in civil litigation in order to seek a stay of discovery.") (citing cases). The Government has "a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988); *see also SEC v. Abraaj Inv. Mgmt. Ltd.*, 2019 WL 6498282, at *1 (S.D.N.Y. Dec. 3, 2019) (same); *SEC v. Blaszczak*, 2018 WL 301091, at *1 (S.D.N.Y. Jan. 3, 2018) (same); *SEC v. Downe*, 1993 WL 22126, at *11 (S.D.N.Y. Jan 26, 1993) ("It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact."). In addition, "there are significant overlaps between the SEC complaint and the indictment in the criminal case" and "[b]oth actions share a great number of common legal and factual questions, which militates strongly in favor of permissive intervention." *Shkreli*, 2016 WL 1122029, at *3. The motion to intervene is granted.

**II.    Motion to Stay**

"A total stay of civil discovery pending the outcome of related criminal proceedings . . . is an extraordinary remedy." *In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y 1990). Nonetheless, "[a] district court may stay civil proceedings when related criminal proceedings are imminent or pending, and it will sometimes be prudential to do so." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012). The factors to consider in

6

deciding whether to grant a stay are familiar. The Second Circuit has instructed courts to consider:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id.* at 99 (quoting *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

The parties do not dispute that the first two factors favor a stay. For the first factor, as the Government puts it, "the SEC Case arises from the same conduct and circumstances that underlie the Criminal Case and litigation of the SEC Case will necessarily involve the same facts, documents, and witnesses relevant to the criminal trial." Dkt. No. 20 at 2. Javice agrees. *See* Dkt. No. 29 at 2 ("The actions are based on precisely the same alleged misconduct—that Ms. Javice somehow fraudulently induced JPMorgan Chase Bank, N.A. . . . to acquire Ms. Javice's student loan company, TAPD, Inc. d/b/a Frank . . . , for $175 million."). "Courts have consistently recognized [the overlap of the issues] as a particularly significant factor." *Shkreli*, 2016 WL 1122029, at *4.

The SEC's complaint alleges that, in 2021, Javice engaged in a scheme to defraud JPMC into purchasing Frank for $175 million through false representations about the number of customers that Frank had collected. Dkt. No. 1 ¶¶ 1–2. In particular, Javice misrepresented the number of customers with identity information that Frank possessed. *Id.* ¶ 2. She represented that Frank had gathered identity information for 4.25 million customers, whereas Frank in fact had identifying data for only about 300,000 students. *Id.* ¶¶ 1–2. The complaint alleges that "[t]o ensure that JPMC went forward with the transaction, Javice embarked on a fraudulent

7

scheme to (1) hide the fact that Frank had identifying data for only about 300,000 students; and (2) fabricate data to falsely support Javice's claims." *Id.* ¶ 2.

The indictment in the criminal case charges Javice with the identical conduct. It charges that Javice "engaged in a scheme to defraud by submitting false and fraudulent representations about . . . Frank . . . and its user data, among other things, to potential acquiring companies, including to [JPMC] . . . and to at least one other bank . . . , in order to defraud those companies out of millions of dollars—consisting of the acquisition price, as well as salary, bonus and other compensation paid to JAVICE as a retained employee at the eventual acquiring company." *Id.*; *see also id.* ¶¶ 3–6 (same).

The two filings not only allege the same scheme, but also use much of the same language. JPMC is the victim of Javice's alleged scheme in both the SEC's complaint and the Government's indictment. *Compare* Dkt. No 20-2 ¶ 2 (indictment describing the relevant scheme as one to "defraud . . . the eventual acquiring company, JPMC"), *with* Dkt. No. 1 ¶ 2. The indictment cites the relevant time period for the alleged scheme as "in or about June 2021 through at least in or about November 2022." Dkt. No. 20-2 ¶ 1. The complaint repeatedly cites dates within this period in relation to the alleged scheme. *See generally* Dkt. No. 1 ¶¶ 37–92. Both the complaint and the indictment reference the same false representations underlying the alleged scheme. *Compare* Dkt. No. 20-2 ¶ 2 (indictment alleging that "Javice engaged in a scheme to defraud by submitting false and fraudulent statements and representations about [Frank] and its user data"), *with* Dkt. No. 1 ¶ 38 (SEC complaint discussing Javice confirming "the false statements in the data room and the substance of her public statements about the size and nature of Frank's 'users': she claimed that Frank had 4.25 million users").

8

The second factor also favors a stay. Javice was arrested on the criminal complaint on April 3, 2023, the day before the SEC complaint was filed, and she has since been indicted. *See* Dkt. No. 20-2 (indicating that Javice was indicted on May 18, 2023). The criminal case is moving forward, albeit—at Javice's request—not as quickly as the Government was prepared to proceed. As the Court has previously put it, "the risk of two parallel proceedings addressing identical issues is no longer speculative; a criminal case is in process." *Calabrigo*, 2022 WL 4752427, at *4. Although "[c]ivil cases frequently move at a slow pace in federal court[,] the Speedy Trial Act and a defendant's constitutional right to a speedy trial mean that criminal cases proceed with relative alacrity." *Id.*

The third factor is the private interest of the plaintiff—in this case, the SEC—in proceeding expeditiously. This factor is neutral as the SEC has taken no position on this motion. *See Calabrigo*, 2022 WL 4752427, at *5; *Abraaj*, 2019 WL 6498282, at *2 ("As '[t]he SEC has taken no position on the Government's request . . . the Court thus need not consider its interests.'" (quoting *Blaszczak*, 2018 WL 301091, at *2)).

The parties dispute whether the fourth factor supports a stay. This factor asks the court to evaluate "the private interests of and burden on the defendants." *Louis Vuitton Malletier S.A.*, 676 F.3d at 99 (citation omitted). A defendant charged in parallel civil and criminal cases has competing interests. On the one hand, the continued prosecution of the civil case presents her "with the dilemma of making potential incriminating admissions during discovery or asserting [her] Fifth Amendment rights, on the basis of which the civil jury can draw an adverse inference." *Treadway*, 2005 WL 713826, at *4. On the other hand, the very pendency of the civil case can present "an economic burden" and a "cloud" on the defendant's career and personal life. *Id.*

9

Javice argues that this factor favors her. She contends that the Government's "*mere unproven allegations* already have severely prejudiced [her], and any delay to [her] defense *exponentially increases* the prejudice to her" and that "time is of the essence." Dkt. No. 29 at 13 (bolding and emphasis in original). She cites that her assets have been seized, that she is currently unemployed, and that the pendency of this action "continues to cloud her future career prospects and her personal life." *Id.* at 14. She also argues that she has been prejudiced because "the Government now wants to ensure that [she] is precluded from mounting a defense in the criminal case." *Id.* Finally, she argues that an indeterminate stay of discovery "increases the likelihood that witnesses will forget critical information, [that] witnesses will not be available for depositions or trial, and that exculpatory documents critical to [her] defense may be lost or destroyed." *Id.* at 15. The Government counters that "a stay of discovery will not prejudice any party," Dkt. No. 20 at 9, and that "the fairness, efficiency, and public good resulting from a stay of discovery outweighs the defendant's preference," *id.* at 1.

Javice's argument that the fourth factor favors her are without merit. The fourth factor is neutral. The position that Javice has taken in the criminal case undermines her argument that "time is of the essence." Dkt. No. 29 at 13. If she had an interest in adjudicating the claims against her as quickly as possible, she had that opportunity. She was offered a trial date in October 2023, just four months away. That date is far sooner than any date that would be available in this case. She nonetheless declined that trial date, understandably asking for more time to investigate and waiving her right to a speedy trial. Dkt. No. 32-1 at 9–11. The cloud that currently resides over her head would not be lifted even if this Court were able to give her a speedier trial on the charges brought by the SEC. She would still face the potential

10

consequences of the Government's indictment—criminal charges, with the prospect of imprisonment, and not just penalties and injunctive relief.

Javice expresses the fear that, if a stay were granted, she "would be forced to start all over again in this action following the conclusion of the criminal action." Dkt. No. 29 at 17. On the presumption that all criminal defendants are entitled to enjoy—that she is innocent—and that she will be found not guilty, she argues that a stay of civil discovery will necessarily delay her ability to completely clear her name. There are two responses to that point. First, any delay in the ultimate resolution of all of the governmental cases against Javice is at least partially of her own manufacture. The Government is ready for trial in the criminal case. Were Javice to try that case on the Government's preferred schedule, it would be concluded before this case—in the ordinary course—would have made much progress. Second, and equally important, Javice is wrong to suggest that after the criminal case is concluded, she will have to start at square one. In the criminal case, she has been given 90 gigabytes of data containing approximately 106,000 files consisting primarily of subpoena returns from about 30 different third parties. Dkt. No. 32-1 at 4. The Government and the SEC have represented that the Rule 16 discovery in the criminal case will include all of the documents that the SEC collected from third parties during its investigative phase—the third-party documents in the SEC investigative file will be produced to the Government under its access request and, in turn, produced by the Government to Javice under Rule 16. Dkt. No. 33. The SEC has also represented that it will not object to Javice's use in the civil litigation of documents obtained in the criminal case provided that Javice obtains relief from any applicable protective order and complies with any civil discovery obligations concerning such materials. *Id*.

The only information from the investigative file that Javice will not have is SEC work product materials to which she would not necessarily have a right even if discovery in this case went forward, a small amount of correspondence with the third parties, and copies of administrative subpoenas that can be easily and quickly produced in this case once the criminal case ends and the stay is lifted. And, while in this case, Javice will have a right to serve Rule 45 requests for documents that are not in the SEC file, any such subpoenas would not be appropriately served until after Javice has reviewed the documents she has obtained from the SEC file—a process that will not be hindered by a stay—to determine what, if anything, is missing and needs to be provided. *See Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 69 (S.D.N.Y. 2020) ("[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45]." (citation omitted)).

Javice's argument that memories will fade and evidence will be lost if a stay is granted is a makeweight. The events in this case are alleged to have occurred form June 2021 to November 2022. The SEC and the Government allege that the victims were defrauded of more than one hundred million dollars. In addition to the SEC case and the pending criminal case, there is a private civil case that presumably will ensure that documents in the possession of third parties will be preserved. If relevant witnesses are not called in the criminal case and their testimony preserved through examination and cross-examination in trial, there is no reason to believe that the very pendency of the criminal case will not ensure that their memories remain fresh—at least until depositions are taken. There is little to no risk of memories fading or documents being lost or destroyed.

The only "interest" of Javice's that will be undermined by a stay is her interest in being able to use the existence of this case, and the tools of civil discovery that it makes available, to obtain discovery to which she would not otherwise have the right in order to defend herself and clear her name in her criminal case. She thus argues that she "is requesting to proceed with discovery in a parallel civil proceeding so she can gain swift and immediate access to the evidence she needs to disprove these allegations" from the Government. Dkt. No. 29 at 11. No doubt Javice would be better off in the criminal case were discovery to proceed in the civil case. But her interest in using the tools of civil discovery to advantage her in the criminal case is not one which the law recognizes; Javice does not have a right to use the tools of civil discovery for the purpose of defending herself in the criminal case. *See Calabrigo*, 2022 WL 4752427, at *5 ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978))). The rules of criminal discovery exist for her to protect herself in the criminal case. Javice thus is not "prejudiced" by her inability to use the tools of civil discovery to advantage her in the criminal case. Had the SEC not sued Javice, she would not have had the tools of civil discovery available to her. A stay of discovery in this case puts her in no different position, reliant on the rules of criminal discovery to protect herself in a criminal case.[1]

---

[1] Javice notes that the SEC has indicated that it intends to continue its administrative investigation into other persons. Dkt. No. 29 at 1, 8, 14. That point does not undermine the Government's argument for a stay. The SEC has indicated that it intends to use administrative subpoenas to continue its investigation regardless whether the Court grants a stay. Dkt No. 25 at 2. A stay of the civil case will not prejudice Javice in this respect in the criminal case. At oral argument and in its filings, the SEC represented that it will make factual materials from its continued investigation available to the Government, and the Government has represented that, to the extent the material is discoverable in the criminal case, it will make the material available to Javice. *See also* Dkt. No. 30. With respect to the civil case, any argument that Javice could

13

The fifth factor favors a stay. Judicial efficiency will be promoted by a stay. "As many courts in similar circumstances have noted, '[t]he [c]riminal [c]ase will resolve issues of fact common to the civil case and may reduce the number of issues to be decided in subsequent proceedings in this case.'" *Abraaj*, 2019 WL 6498282, at *3 (quoting *Blaszczak*, 2018 WL 301091, at *3). To be sure, that may mainly be true if the issues were subsequently decided adversely to Javice, and Javice is entitled here to a presumption of innocence. But if Javice is convicted, the jury's findings likely would be entitled to collateral estoppel effect. *See Parklane Hosiery v. Shore*, 439 U.S. 322, 332 (1979) (providing for offensive collateral estoppel when the defendant had every incentive to litigate fully and vigorously). And even if she is not convicted, proceedings in the criminal case will no doubt be helpful in clarifying the issues between the parties and more quickly bringing this case to conclusion.

Finally, the sixth factor favors a stay. "It is, of course 'in the public interest to prevent circumvention of the limitations on discovery in . . . criminal proceedings.'" *Abraaj*, 2019 WL 6498282, at *3 (quoting *Blaszczak*, 2018 WL 301091, at *3) (internal quotation marks omitted). "A stay is therefore 'often necessary where liberal discovery rules will allow a litigant to undermine, or gain an unfair advantage in, a potential criminal prosecution which parallels the subject matter of the civil action.'" *Id.* (quoting *Downe*, 1993 WL 22126, at *12). Although Javice contends that the public has an interest in a "fair, open, and expeditious civil legal proceeding," Dkt. No. 29 at 18 (bolding and emphasis omitted) and in "seeing this action promptly resolved," *id.* at 19, that interest is not limited to the resolution of the civil action. It also applies to the resolution of the criminal action, which must take place in a manner that

---

make that, absent the stay, the SEC is improperly circumventing the Federal Rules of Civil Procedure by the use of administrative means, Javice will be able to make those arguments after the stay is lifted.

respects the rules of criminal procedure applicable to all other criminal defendants. A stay is necessary to protect the integrity of those rules.

Defendant's remaining argument focuses on the extent to which a stay in this case should apply. Javice asks that if the Court is inclined to entertain a stay, that it "exercise its judicial discretion to impose only a limited stay of fact depositions pending resolution of the criminal case, rather than putting on hold all discovery." Dkt. No. 29 at 23–24 (bolding and emphasis omitted). Javice thus asks that she be permitted to conduct immediate document discovery. *Id.* at 24. Her argument does not have enough force to overcome the Government's countervailing arguments. Discovery in civil cases is broad and occurs early in the proceeding. The parties generally may seek discovery after they confer as required by Rule 26(f). *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005); *see also* Fed. R. Civ. P. 26(d)(1). Further, the parties are permitted significant latitude in their discovery requests, as they may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense involved in the pending litigation." *Sullivan v. StratMar Sys., Inc.*, 276 F.R.D. 17, 19 (D. Conn. 2011); *see also* Fed. R. Civ. P. 26(b)(1). "Relevance" under Rule 26(b)(1) of the Federal Rules of Civil Procedure has been construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc*, 437 U.S. at 351. Finally, "the scope of relevance under Rule 26 is broader than under the Federal Rules of Evidence. Thus, parties can obtain information in discovery that is not necessarily admissible at trial." *Kaiser Aluminum Warrick, LLC v. U.S Magnesium, LLC.*, 2023 WL 2024620, at *1 (S.D.N.Y. Feb. 15, 2023).

The rules of document subpoenas are significantly narrower in keeping with the distinctive features of a criminal case. The subpoena duces tecum, or the subpoena compelling

the production of physical evidence, issued pursuant to Federal Rule of Criminal Procedure 17, "was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974); *see also United States v. Goldstein*, 2023 WL 3662971, at *2 (E.D.N.Y. May 25, 2023) (noting that "although *Nixon* did not determine the propriety of a Rule 17(c) subpoena issued by a defendant to a third party, most lower courts have embraced the standard announced in *Nixon* as applicable to this circumstance"); *cf. United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), *as amended* (Feb. 20, 2008) (stating that "Rule 17(c) subpoenas are not to be used as broad discovery devices, but must be reasonably targeted to ensure the production of material evidence"). Rather, "its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 698. The standards for justifying such a subpoena are more rigorous than that in civil cases: "In order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id*. at 699–700; *see also United States v. Fernandes*, 115 F. Supp. 3d 375, 380 (W.D.N.Y. 2015) (denying request when it constituted a mere "fishing expedition" that "may ultimately lead to the disclosure of information that could be used on cross-examination for impeachment"). Further, unlike Rule 26 subpoenas, the scope of Rule 17 subpoenas does not exceed the boundaries of the Federal Rules of Evidence, as the subpoena must meet the requirement of "admissibility." *Id.* at 700; *see also*

*United States v. Ashley*, 162 F.R.D. 265, 267 (E.D.N.Y. 1995) (denying subpoena because of lack of showing that documents would be admissible at trial).

In this case, permitting document discovery to go forward would not significantly advance the civil litigation. As previously indicated, Javice will have access to a vast amount of material usable in the civil case through the means of Rule 16 discovery in the criminal case. That discovery will include virtually all of the SEC's investigative file. And it will include documents from at least 30 different third parties. She has not made a convincing case that she needs more document discovery to be prepared to move quickly in this case when the criminal case is resolved and the stay is lifted. Further, the Government has indicated that it is prepared to try the criminal case soon; any additional delay will be of Javice's own making. Javice has made no showing that there is significant data that she would obtain from a Rule 45 subpoena to which she does not already have access or will soon have access through the criminal case. Under these circumstances, the only effect of the Court allowing Javice to proceed in this case with document discovery would be to circumvent the limits of discovery in the criminal case before Judge Hellerstein.

## CONCLUSION

The Government's motion to intervene and stay discovery is GRANTED.

The SEC's motion to adjourn the deadline for its responses to Javice's requests for the production of documents is DENIED AS MOOT.

The Clerk of Court is respectfully directed to close Dkt. Nos. 19, 25.


SO ORDERED.

Dated: June 20, 2023
      New York, New York

                                    LEWIS J. LIMAN
                                United States District Judge